Your Honor, my name is Jeremy Katz. I'm a third-year student from Chapman University School of Law. I'm appearing here today as pro bono appointed counsel for Petitioner Shantan Lam. I appear under the supervision of Professors Peter Al-Khasiabi and Kim Penfield. I anticipate reserving two minutes for rebuttal. This Court should reverse because the immigration judge erred in failing to apply the standard from Hockenmayer, as well as the immigration judge mishandled the evidence and inserted speculation. First, under Hockenmayer, the Ninth Circuit quoted policy from the Bureau of Immigration Appeals, that it is the use of false documents to facilitate escape from persecution is entirely consistent with a claim for asylum. That's why in Hockenmayer, the Ninth Circuit distinguished between documents used solely for the purpose of entry and documents used to positively make an asylum claim. Would you concede that there are some inconsistencies in the documents, or are you going to say that they're perfectly in order? Well, Your Honor, we concede that there is a difference between the travel documents, the visa and the passport, and the birth certificate that was presented. So there's some inconsistencies that the IAJ has presented with that have to do with dates and names, correct? That is correct. I mean, it's not like everything presented is without question the correct date or the correct name or is it his brother or anything like that. That is correct, Your Honor. However, in this case, when Petitioner positively made his asylum claim, he only based that off of his testimony and off of the birth certificate. He did not use the travel documents for any purpose other than escape from China. In fact, when he first arrived in this country, he voluntarily and without solicitation surrendered the documents to the immigration official. That's not what I understand. I understand he didn't do it as soon as he arrived. He did it at his first asylum meeting. But when he did that, Your Honor, he did it without prompt from the government. Well, but let's just get the facts straight. It wasn't when he arrived at the airport. It was sometime later when he went in for his asylum. I believe it was at the first meeting with the asylum here. Right. Not when he landed at the airport. I don't know the exact moment when that occurred, but it was when he presented with the first opportunity to discuss it. It wasn't the government prompting the request. Mr. Land voluntarily and without solicitation surrendered those documents to the government. Now, in answer to Judge Callahan's question, the inconsistency you're talking about or that I guess she's asking about, you're saying that these were part and parcel of his escape. The use of the travel documents were part and parcel of his escape. The travel documents you're talking about are the passport. And the visa. Okay. Well, now, I think in your brief that you made a good argument, another way to look at these documents, and you fit it into, well, it could have all been this. But that's not our standard here. For us to reverse here and grant the petition, you need to show that it's a very high standard, that we would be compelled to do it. And so you really need to show us that the IJ, that everything was speculative and that it wasn't based on another interpretation. If there's just two interpretations, we're not, at this particular stage, we can't reverse this unless we say we're compelled. How do you answer that question? Yes, Your Honor. And I would say that the result is compelled because under Akinmaid, when you distinguish documents used solely for entry, and that includes escape documents, from documents used for the purpose of making an asylum claim, to quote Akinmaid, the use of false documents solely for entry cannot serve as the basis for adverse credibility. Well, let me, let's talk about Akinmaid, though. This case, I think, is different because it appears that in Akinmaid, the alien's identity was established independently from the use of the fraudulent Canadian passport. But here, the only evidence that the petitioner is not Zhaohao Lan, as set forth in the birth certificate, as set forth in, and apparently properly evidenced that the petitioner is not, so is set forth in apparently properly issued Chinese passport, is petitioner's testimony that Zhaohao is his brother. So, you know, perhaps the use of a fraudulent passport does not compel an adverse credibility finding, but Akinmaid will not support the suggestion that the use of a fraudulent passport is not relevant to the determination of who is an alien, who the alien is and his credibility. So I think you're kind of stretching what Akinmaid stands for. It's different than this. Well, Your Honor, in Akinmaid, he used a set of false documents to escape and did present other evidence. Here, the ---- Was there any question about who he was, though, in that case? Yes, because he presented a, in Akinmaid, the Akinmaid petitioner presented a false Canadian passport from a person who he met in Seoul, Korea, and had difficulty describing how he got it and who he was. Here, the petitioner admits the photo in the travel documents is his. It's the name in the travel documents that was necessary to escape China. It's the State Department report that the immigration judge had in evidence explains the Chinese government will often impose travel restrictions on people who are members of the suspect class, such as practitioners of Zonggang. And so the only way for someone who is suspect in China to escape is to use false documents. It would not be possible for him to travel under his own name. Let's take your premise that he had to use a false passport to get out, and he came clean with that at an early opportunity. That's correct. Okay. He still has to prove who he is, and he's got a birth certificate. That's correct. But the problem with the birth certificate, the IJ said, is that the date on which it apparently was issued is prior to the date he sought to have it issued. And yet that is entirely consistent with a testimony that he gave where his brother procured documents prior to their need and prior to their request. The petitioner testified that his brother arranged all the travel documents without his knowledge, gave them to him five days before he escaped China, and that the immigration judge's fatal assumption is that the request to the brother is what triggered the procurement of these documents. That is speculation because, as the petitioner testified, his brother would procure many of these documents prior to their need and prior to their request. And further, Your Honor, there's several issues involving the actual evidence of the birth certificate itself. The immigration judge discounted the value of the birth certificate based largely on its appearance and additionally on the fact that it was a photocopy. And yet the immigration judge had no problem giving full credit to the passport and visa, which were also only photocopies. In fact, the government had them in the government's possession and could not produce them. All that the immigration judge had was a photocopy. Kagan. Point me to evidence in the record that authenticates the birth certificate. The birth certificate can be authenticated by testimony, and he testified as to it. It can also be authenticated through any means available under common law. And one of the methods here is that it's a statement against interest. If that's enough to overcome the hearsay exclusion, that should be enough to authenticate a document. All right. So it's his testimony. It's his testimony. Anything else? It's also that it's notarized. And notarization is sufficient to self-authenticate a document. Did you want to reserve two minutes? I will reserve the remainder of my time for rebuttal. Thanks, Mr. Katz. Good morning. Good morning. May it please the Court. Hello. My name is Tracy Jones, and I'm representing the Respondent, the United States Attorney General. In this case, the Petitioner entered into the United States using a passport and a visa that both contained his picture. The Petitioner was admitted as a non-immigrant visitor and remained longer than permitted. He applied for asylum withholding of removal and protection under the Convention Against Torture. And he was his he appeared for an interview before an asylum officer who ultimately referred his applications to an asylum to an immigration judge in order for the immigration judge to further consider the claims. Do I understand correctly, Ms. Jones, that he told the IJ at the hearing that it's my picture, but it's my brother's passport? Yes, that is true. It's his name. And then she looked at a photocopy and said, well, it doesn't look that way to me, basically. Is that what happened? Well, Your Honor, on page 132 of the administrative record, the Petitioner did state that the passport was fraudulent. However, on page 38 of the administrative record, the immigration judge clearly stated that both the passport and the visa appeared to be valid, legitimate documents. How does she deduce that? Well, Your Honor, the passport was actually issued by the Ministry of Foreign Affairs for the People's Republic of China. And it was issued with the Petitioner's picture. Later on, three months later, the Petitioner was able to obtain a visa also from the Chinese government containing the same picture. The immigration judge found that the Petitioner's statements as to how the passport became to be in his possession were incredible. Well, I mean, that's what I'm getting at. Why? Well, first of all, she's operating off of a photocopy. That's correct. And I just don't know where she gets the fact that I can look at it and tell it's really a genuine passport after all. Well, the Petitioner failed to submit any additional evidence that showed that the passport was fraudulent. Okay, but he gets up and he tells his story. She's got to have some basis to say I don't believe it. And her basis was I've looked at a photocopy and it looks like a real one to me. Yes, Your Honor. The only evidence that the Petitioner submitted to support his claim of his additional identity of Xi'an Tong is a birth certificate. The birth certificate was not properly authenticated. Yes, as the Petitioner concludes in his briefs, that a foreign document can be authenticated by testimony, but here the Petitioner failed to authenticate the document by testimony. The Petitioner testified that his brother in his opening briefs, the Petitioner claimed that his brother obtained the birth certificate without his knowledge. Why isn't his testimony, this is my birth certificate, this is my picture and this is me, why isn't that sufficient authentication? Because he provided implausible testimony as to how, as to the delivery method of the birth certificate and also how the birth certificate became to be in his possession. He testified that he, that when asked about this inconsistency between the birth certificate and the passport and also the dates in the birth certificate, the Petitioner stated that when asked, he said I don't remember. It wasn't until his opening briefs that they tried to clarify, that the Petitioner tried to clarify this explanation and state that his brother could obtain the birth certificate without his knowledge. However, he had ample opportunities during the merits hearing to present this explanation, but failed to do so. When asked by government's counsel during the merits hearing about the inconsistencies, he stated I do not remember. And that is not sufficient explanation to overcome the immigration court's concerns about who this person really is. The passport appeared to be a valid, legitimate document as stated. He did not present any evidence to the contrary. Except his testimony. Which the immigration judge concluded was incredible, because he did not present plausible explanations and stories on to how he obtained these documents. Why is that so incredible that he had, he obtained a false passport? I mean, why is that beyond the realm of possibility? Because there was no evidence. He testified. I mean, what else would you expect him to do? Establish that the document is actually a valid or not valid document. He failed to do that. He claimed that his brother obtained this passport, and these are on two separate occasions, using his photo and without his knowledge. He stated that on May the 14th that he received these documents, and even though he admitted in his testimony that he had no intention of fleeing China, that his brother was the one who actually went to go seek these travel documents in order for him to travel to China. It wasn't until May the 14th that he realized or became aware of these travel documents. And even though the documents contained a false name, the petitioner still used them to depart the United States, meaning to depart China and enter into the United States. And also, the petitioner's birth certificate also was not properly authenticated. Under Title VIII, Section 287.6 of the Code of Federal Regulations, all foreign documents are not legally binding. All documents must be authenticated. Here the petitioner did not authenticate the document. The petitioner, when asked why the, why did he seek this birth certificate, he stated that he requested the birth certificate in 2003 in order to be able to, in order to be able to, quote, unquote, make a living here. However, the birth certificate clearly states that it was issued on June the 21st, 2001, 2002, which is almost a year prior to him even requesting it. Mr. Katz has an answer for that. Mr. Katz says obviously the brother got it before he sent it to, before his brother requested it. Yes, Your Honor. As I stated prior, before, the petitioner did not present this explanation to the board or to the immigration judge, even though he had ample opportunity to do so. When asked about the date on the birth certificate, the petitioner merely stated, I don't remember. That is not sufficient in resolving the immigration court's concerns as to who this person is, as to who this person is. All right, so you're saying the explanation he's giving now was not part of the record that the IJ and the BIA considered? That's correct, Your Honor. And therefore, he did not exhaust his administrative remedies in presenting this explanation to the agency to consider. Furthermore, the petitioner also had inconsistencies in regards to the persecution that he allegedly suffered while in China. The petitioner stated that he was detained in December, 2001, and upon release that he was practicing Zonggang by himself. However, later on in the testimony, the petitioner stated that he continued to practice Zonggang and teach it to his friends on Monday, Wednesdays, Fridays. This is a material inconsistency, for the simple fact that the petitioner's sole claim of past persecution rests on the fact that the petitioner was a practicing Zonggang practitioner. This inconsistency as to his practices after he was released from detention clearly goes to the heart of the claim and supports the adverse credibility finding. So therefore, because the petitioner did not establish his identity and also did not establish his practices of Zonggang, it all supports an adverse credibility finding. Furthermore, the petitioner also stated that the police continued to come to his home and, quote-unquote, watch him and interrogate him. However, the petitioner did not have any further incidents with the police, even though he continued to practice and teach Zonggang. He continued to practice in his home by himself and also teach his friends on Monday, Wednesdays, and Fridays. The immigration judge found this to be an inconsistency that went to the heart of the petitioner's claim. The petitioner, in this case, claimed that the police, or admitted that the police came to his home unexpectedly. And therefore, it is unclear from the record how he was able to continue practicing Zonggang by himself and then also practicing and following up on this claim. He would say they beat him up three times a week instead of I was able to elude further harm. Yes, Your Honor, but the immigration judge never reached the actual merits of the decision because the immigration judge weighed the passport and the birth certificate and determined that the passport deserved more evidentiary weight because the petitioner, because the passport appeared to be both valid and legitimate, and the petitioner did not submit any evidence. Contrary to that. So therefore, the immigration judge based his adverse credibility finding on the fact that the petitioner did not establish his identity, nor did the petitioner credibly testify about the incidents he suffered while in China. Therefore, if the court wants to get to the merits of this case, it has to be remanded under Ventura and Thomas back to the agency to decide it in the first instance. You're saying what we should do then is send it back for further proceedings on whether there's been persecution and so forth? Yes, that's correct, Your Honor. And U.S. v. Whitworth. You've got about a second left. I see my time expired, ma'am. Thanks, Ms. Jones. Thank you very much. We're done. Mr. Katz, you have, I think, two minutes left or two minutes and 11 seconds left. I'd like to just briefly address one of the claims made. The immigration judge, in her ruling, said that the police authorities showed up three to five times per week. Mr. Land testified the police showed up once every three to five days. That is, the immigration judge made a material error in stating the testimony that Mr. Land gave and based her adverse credibility determination partly on that material error, and the record is rife with material errors like that. That's an issue that was extensively briefed in the opening brief. What's your answer to Ms. Jones' point that you didn't explain the date discrepancy on the birth certificate below? You're doing it now for the first time. Below, Mr. Land said that he did not remember the date that he requested the birth certificate. So how can you make new arguments for him that the I.J. didn't have in front of her at that time? Because even on the record in front of the I.J., presuming that it was made in 2003, that doesn't bolster his claim. And minor discrepancies in date which do not bolster the claim cannot support an adverse credibility determination. Under the Damiazi job case. Further, the government lawyer attorney has said that he did not testify credibly because he could practice by himself, and then later on he said that he practiced with others. He initially testified that he practiced in a group in a park that was broken up by the police, and then he was practicing. And speculation as to the efficacy of the Chinese state surveillance apparatus is improper speculation. And fundamentally, although it has been argued that he delayed his escape, when presented with an opportunity to escape, five days later he was on a plane to America, and the immigration judge found that Mr. Land would not face persecution because he could continue practicing Zonggong in secret. If the only way upon removal for Mr. Land to practice Zonggong in China is secretly, then by definition his theory is well-founded. See, I have eight seconds left. Thank you very much. I don't have any more questions. Thank you. Okay, so thank you, Mr. Katz, and Ms. Jones, thank you as well. I know you and the law school took this on a pro bono basis. We appreciate it very much, and you did a great job on it. Thank you. The case just argued is submitted.
judges: Silverman, Callahan, Quist